# CARMEN AND SOLEDAD DAVILA

*v.*

# SAN JUAN LIGHT & TRANSIT COMPANY.

SUPPORT OF ILLEGITIMATE CHILD—RAILROADS—DEGREE OF DILIGENCE REQUIRED IN THEIR OPERATION AND PROVIDING APPLIANCES.

1. Under the local law there are legitimate children, or those born in lawful wedlock; natural children, or those whose parents could lawfully intermarry, and other illegitimate children. The parent is liable for the support of all.

2. A railroad company is entitled to the use of its track. One upon it in the country is a trespasser. Those operating its cars there are not bound to be on the lookout for him, but must use all reasonable effort to avoid injury to him after his presence is known. In a city or place where many persons are passing about, public policy requires however that those operating the cars should be on the lookout and use all reasonable care to avoid injuring them.

3. The company must provide all such appliances for use in the operation of its cars as are reasonably calculated to protect persons from injury, and use all reasonable care to keep them in good condition. If it knowingly uses defective appliances, or which in the exercise of reasonable care might be known to it to be so, then it is liable for all injury resulting from such use.

April 29, 1904.

*Mr. Anderson* for plaintiffs.

*Mr. Hord* for defendant.

*Railroads—lookout.* As to duty to maintain lookout on railroad trains, see editorial note to Smith v. Norfolk & S. R. Co. 25 L. R. A. 287.

Davila v. San Juan L. & T. Co.

HOLT, Judge, gave the following charge to the jury:

You are entitled to the thanks of all interested in this case for the attention which you have given to the hearing of it. It now becomes my duty to instruct you as to the law. It then becomes your duty to apply it to what you think has been proven in the case, and reach a conclusion. This is a suit by two infant children who, claiming to be the children of Eusebio Davila, say they are entitled to recover damages by reason of his death through neglect of the defendant. They sue, claiming that in September last their father was upon or near the track of the defendant company, about 10 o'clock at night, and that, being in that position, he was killed, not through his own neglect, but by reason of the neglect of those managing the car, coupled with the alleged neglect of the company in furnishing proper appliances to control it.

A railroad company, as it handles a dangerous power, is bound to furnish appliances for its operation reasonably calculated to protect human life. A railroad company operating a train must have appliances reasonably calculated to prevent injuring people who may be either on or about it.

A railroad company is also, in law, present in the action of its employees when they are engaged in the business of the company. For instance, the defendant company has a motorman and a conductor operating and managing a car at this time this side of Rio Piedras. In law the company is there doing that business, and in the conduct of the work the company is present in the action of its employees; therefore if those employees in the management of that business are guilty of neglect, the company is, because it must necessarily act by agents. While it is in law a person, it is an artificial being that must act through natural persons.

Davila v. San Juan L. & T. Co.

The plaintiffs, therefore, by their next friend, say that the company brought about the death of the person, who, they say, was their father, through the neglect of those managing the car, and the defective character of the appliances which were being used.

The defendant company says: We were not guilty of any neglect for which we are liable; and, second, the deceased was guilty of neglect that was the direct cause of his death; and therefore you cannot recover.

There are two questions for your determination, and the first is whether these children—because this is not an action by the mother, but by the children—are the children of Eusebio Davila, the man who was killed; and if you find they were not his children, that is the end of this case. Second, if they were his children, then, was his death brought about by the negligence of the company?

There are known to the local law legitimate children, natural children, and also other illegitimate children. Legitimate children are those born in lawful wedlock, lawful marriage; natural children are those not born of lawful marriage, but born of persons who could contract lawful marriage. If a woman under the existing law here has a child by a man, and those two persons were capable of being married and having children; in other words, if they were not, either one or the other or both of them, already married, it is a natural child, and the father can be made, under certain circumstances, to acknowledge it as his child; and if he has recognized it by his conduct as his child, then it may even bring an action to compel him to acknowledge it as his natural child. There are also other illegitimate children. As a matter of law, a parent is bound to support his legitimate child, his natural child, and also his other illegitimate child. A man has no right to bring a human

being into the world, and then throw it one side as a waif in society, and not support it; and there is, I take it, no reasonable and fair man but what would be willing to support his child; at least he ought to be willing to do so.

I shall not attempt to detail all the testimony. I will, however, say that to the mind of the court, when the mother testifies that the child is the child of a certain man, there might be danger in accepting it, if that were all; but when the mother testifies that the child is her child and by a certain man, and there is testimony that that man has also said that it is his child, that, to the mind of an ordinary person, would seem conclusive of the fact. It is difficult to conceive why a man should say that certain children were his unless he had good ground for believing so, and while there may be a motive for the mother coming in now, when the father is dead, and claiming the children were those of the dead man, it is difficult to perceive the motive he would have in stating while he was alive, that they were his children, if he had no reasonable ground to so believe. Whether they are his or not is, however, a fact in the case which you must determine from the evidence.

Leaving that question, let us consider briefly that of negligence, in case Eusebio Davila was the father of these children. A railroad company is entitled to the use of its track. It does not matter whether it is in a town, or a thickly settled place, or in the country. In either place it has this right. The law, in consideration of human life, however, makes a difference between the care required of those managing a train or a car in a thickly settled place, and in the country where there are scarcely any people passing about. In a city, or in a town, or in a neighborhood where people are passing about frequently and people are liable to be exposed to danger from a train, those in charge of it are bound to be on the lookout for peo-

Davila v. San Juan L. & T. Co

ple. They are bound to watch for them. Whereas in the country, where there are not a great many people passing about, those in charge are not bound to be on the lookout for people, but they are only bound to use reasonable care to prevent injury after they have discovered the peril in which the person has placed himself. I will leave the question to you to decide as to whether this was such a place, and was so frequented that those in charge of the car should have been on the lookout for people, or whether they were not bound to be on the lookout, but only bound to avoid injury to them if they could do so by the use of all reasonable care after they found that they were in danger. In the country a man goes upon the track of a railroad company at his own risk; he is a trespasser, and those operating the train are not bound to be on the lookout for him; they must give some warning, however, to him if they see him. They must ring a bell or blow a whistle. However, if they give that warning, they have a right to presume he will get out of the way, because it is to be presumed that a man in his right mind will avoid injury; they are not bound to stop the train unless they find he is not going to do so. If they find that he is drunk, or deaf, or so crippled that he cannot get out of the way, or if they get so close as to see that he is not going to get out of the way, and they can stop the train, it is their duty to do so, and avoid injuring him. In other words, although the man may be a trespasser upon the track, either a railroad or trolley track, the railroad has no right to injure or kill him with impunity. They must avoid injury to him if they can reasonably do so.

The testimony is conflicting; it is always so in this character of cases; but it tends to show that a car coming from Rio Piedras towards San Juan, and on the other side of stop 29, struck this man, Eusebio Davila. There was a motorman and

Davila v. San Juan L. & T.

a conductor on the car; also some other people. Who were there you are to determine from the testimony. There is some evidence that the motorman saw an object on the track. If you believe so, and that he had reasonable ground to think it was a human being, and then he failed to signal to him or after he had reasonable ground to believe he would not or could not get out of the way, to use all reasonable means within his power to avoid injury to him, then the company is responsible to these children for the injury, provided they are the children of the deceased.

These parties, the deceased and the railroad company, had relative duties to each other. The deceased had no right to go upon the track and recklessly expose himself, when the other side could not avoid, with reasonable care, injury to him. I do not need to tell you that when a person throws himself in front of a train, and there is no reasonable opportunity to prevent injury to him, and the man is killed, the railroad company is not responsible. On the other hand, if the man is dead drunk or insane, and this becomes known to the agent of the company, and he has an opportunity to avoid injury to him, then he must do so, or the company is responsible.

It is for you to determine from all the testimony whether these cars were provided with proper appliances. If not, and thereby this man's life was taken, or if by having them they could have avoided injury to him after discovering his peril, then the company is responsible. A railroad company is not only bound to provide proper appliances, those that are reasonably safe, but it is bound to keep them in good condition, and to operate its cars so prudently as reasonably to avoid danger to human life. They must furnish such appliances, and they must so operate the car, according to the circumstances of the case, as will reasonably avoid injury to persons. If a company

Davila v. San Juan L. & T. Co.

knowingly uses defective appliances, or could by the exercise of reasonable care know they are so, it is liable for an injury, even though the deceased is a trespasser, if the accident could have been avoided had they been in good condition.

In case you believe from the testimony that this was a locality of such a character that the deceased was a trespasser upon the track, then the liability of the company is to be measured by the appliances in use and the conduct of the employees after they discovered his situation, and not by any neglect in failing to discover it. As I have already said to you, they need not stop the train when they see a man on the track, but they must give some warning; and it is only when they see he is not going to get out of the way that they are responsible, if they injure him when they could by proper effort avoid it.

I think you can take the testimony in this case, and, while it is somewhat conflicting, determine whether these two children are entitled to recover. If you find for the plaintiffs, then they are entitled to such a sum in your opinion as will furnish them a reasonable support and education during their minority, considering their circumstances in life. The testimony tends to show that their father was forty years of age and a store-keeper in a small way; also the ages of the children; and if you find for them, you will find such a sum as you think would compensate them for the loss sustained by reason of the death of their father, not exceeding, however, the sum claimed in the declaration.